IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ALONZO DALE JONES, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:18CR58-1 |
| | ) | 1:21CV707 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This Court (per United States District Judge William L, Osteen, Jr.) previously entered a Judgment memorializing, inter alia, Petitioner's concurrent prison sentences of 130 months, 120 months, and 120 months, as a result of a jury's verdicts of guilt against him on Counts Nine, Ten, and Eleven of the Superseding Indictment in the above-captioned criminal case, which charged him with possessing with intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), possessing with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possessing with intent to distribute a quantity of oxycodone in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), respectively. (Docket Entry 62 at 1-2; see also Docket Entry 18 (Superseding Indictment) at 4-5; Docket Entry 38 (Verdict) at 1-2.)[1] Petitioner appealed (see Docket Entry 64), but the United States Court of Appeals for the

---

[1] Parenthetical citations refer to Petitioner's above-captioned, criminal case.

Fourth Circuit dismissed that appeal, see United States v. Jones, 809 F. App'x 150 (4th Cir. 2020). Thereafter, he did not petition the United States Supreme Court for certiorari (see Docket Entry 82, ¶ 9(g)), but did timely file a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion"), alleging (as the lone ground for relief) "Ineffective Assistance of Counsel" (id., ¶ 12(Ground One)). The United States has responded (Docket Entry 86 (Response)) and Petitioner has replied (see Docket Entry 88 (Reply)). The Court should deny relief.

To prevail on his ineffective assistance claim, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-96 (1984). Making such a showing "is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also id. ("[T]he standard for judging counsel's representation is a most deferential one."); Strickland, 466 U.S. at 694 (defining prejudice as "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); Dockery v. United States, Nos. 1:12CR289, 1:15CV200, 2017 WL 2062899, at *2 (M.D.N.C. May 12, 2017) (unpublished) (Schroeder, J.) ("Relief for ineffective assistance of counsel can be granted only if petitioner can show specific errors made by counsel.").

2

To attempt to carry out the difficult task of establishing ineffective assistance of counsel, the Section 2255 Motion does not set forth "[s]upporting facts" (Docket Entry 82, ¶ 12(Ground One)(a), but instead points to the "Memorandum of [L]aw attached [t]hereto" (id.). That document, in turn, asserts that "[Petitioner's] counsel was ineffective for not requesting a limiting instruction regarding [Petitioner's] 2010 cocaine distribution conviction, limiting the jury's consideration of th[at] conviction to impeachment purposes only and not for substantive and bad character purposes." (Docket Entry 83 at 9 (emphasis omitted).) The United States has countered that "[Petitioner] has not established that [his counsel] acted outside the wide range of reasonable professional assistance. . . . [Petitioner's counsel] has made clear that he, strategically, chose not to draw further attention to [Petitioner's] prior conviction by requesting a limiting instruction . . . ." (Docket Entry 86 at 11-12 (referring to Docket Entry 91 at 1); see also Docket Entry 88 at 2 (acknowledging counsel's averment that "he made a strategic decision not to request such instruction because it 'only reinforces in the jurors' minds that the evidence does impeach [Petitioner's] testimony'" (quoting Docket Entry 91 at 1)).)[2]

---

[2] In the face of that argument and evidence, the Reply merely "contends that [Petitioner's] counsel's decision not to request a limiting instruction cannot be considered strategic[, b]ecause[] this case boil[ed] down to the credibility of [Petitioner] versus
(continued...)

3

Under these circumstances, this ineffectiveness claim fails as a matter of law. See Clozza v. Murray, 913 F.2d 1092, 1100 (4th Cir. 1990) ("[Courts] cannot, in keeping with *Strickland*, second-guess counsel's tactical choices."); see also United States v. Gregory, 74 F.3d 819, 823 (7th Cir. 1996) ("[T]he decision not to request a limiting instruction is solidly within the accepted range of strategic tactics employed by trial lawyers in the mitigation of damning evidence. If the lawyer cannot stop the evidence from being admitted, it is perfectly rational to decide not to draw further attention to it by requesting a . . . limiting instruction."); United States v. Cartagena-Carrasquillo, 70 F.3d 706, 713 (1st Cir. 1995) ("Whether an instruction will 'cure' a problem or exacerbate it by calling more attention to it than warranted is within the ken of counsel and part of litigation strategy and judgment."); United States v. Childs, 598 F.2d 169, 176 (D.C. Cir. 1979) ("It is well known that, even when a limiting instruction is likely to aid the accused's cause, astute defense counsel may prefer tactically to forego it in the interest of

---

²(...continued)
the credibility of multiple law enforcement officers" (Docket Entry 88 at 2); however, that contention simply highlights the sound reason Petitioner's counsel felt compelled to make the tactical decision against requesting a limiting instruction, i.e., Petitioner's defense turned on the credibility of his testimony and Petitioner's counsel reasonably feared that a limiting instruction would have "'only reinforce[d] in the jurors' minds that the evidence [of Petitioner's prior conviction] d[id] impeach [his] testimony'" (id. (quoting Docket Entry 91 at 1)).

4

avoiding its inevitable focus of the jury's attention on unfavorable evidence."); United States v. Barnes, 586 F.2d 1052, 1059 (5th Cir. 1978) ("Counsel may refrain from requesting an instruction in order not to emphasize potentially damaging evidence . . . . We decline to second guess counsel's decision."); Miller v. United States, No. 4:10CV1959, 2013 WL 3835772, at *4 (E.D. Mo. July 24, 2013) (unpublished) ("[A] criminal defendant who testifies at trial may be impeached by evidence of prior criminal convictions. . . . Trial counsel's decision not to seek a limiting instruction can be sound trial strategy as it may be to a defendant's benefit not to remind the jury of their prior crimes. . . . [T]rial counsel's failure to request a limiting jury instruction on the issue of [the petitioner's] prior convictions fell within the 'wide range of professional assistance,' *Strickland*, 466 U.S. at 689, and so [the petitioner] fails to demonstrate that his trial counsel's performance was deficient.").[3]

---

[3] Alternatively, as the Response rightly observes, "[Petitioner] also fail[ed] to meet the 'prejudice' prong. . . . [The Memorandum of Law] repeatedly argues that[,] but for the admission of his prior conviction without a limiting instruction, the jury would have reached a different verdict. This is pure speculation . . . ." (Docket Entry 86 at 12 (referring to Docket Entry 83 at 8, 13, 17); see also Docket Entry 88 at 2 (baldly stating that, "[h]ad [Petitioner's] counsel timely requested a proper limiting instruction, it's reasonably probable the limiting instruction would've altered at least one juror's perspective of the Government's case where the juror would've found reasonable doubt regarding at least one element for each charge in Counts 9, 10, and 11," but offering no support for that bald statement).) "[T]o succeed on his ineffective assistance claim[], [Petitioner]
(continued...)

The Memorandum of Law additionally asserts that "[Petitioner's c]ounsel was ineffective at [Petitioner's] trial; there was a lack of communication, resulting in no pretrial investigation and failure to prep and adequately go over [Petitioner's] trial testimony; and [Petitioner's c]ounsel failed to adequately challenge drug amounts." (Docket Entry 83 at 17 (emphasis omitted).) Those assertions entitle Petitioner to no relief.

To begin, any claim for ineffective assistance predicated on "lack of communication" (id. (emphasis omitted)) or "failure to prep and adequately go over [Petitioner's] trial testimony" (id. (emphasis omitted)) falls short, as he (A) has not identified how any additional communication or preparation would have altered anything that transpired at trial (including his testimony) and (B) has not established a reasonable probability that any such alteration would have forestalled the guilty verdict (see id. at 17-18 (neglecting to address those two issues); Docket Entry 88 at 4 (repeating vague complaints of "lack of communication" and "failure to prep and adequately go over [Petitioner's] trial testimony," but not specifying how his testimony (or any other aspect of the trial) would have changed and/or how any such change conceivably could have led to acquittal), 5 (declaring without

---

³(...continued)
is not entitled to satisfy the prejudice requirement through rank speculation . . . ." United States v. Basham, 789 F.3d 358, 375 (4th Cir. 2015) (internal quotation marks omitted).

6

further discussion: "Nor did [Petitioner's] counsel adequately prep or go over [Petitioner's] trial testimony.")). In other words, as to these aspects of his ineffectiveness claim, "Petitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the Strickland analysis." Cano v. United States, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) (Dietrich, M.J.), recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.); see also United States v. White, Nos. 7:13CR13, 7:16CV80934, 2017 WL 2378018, at *4 (W.D. Va. May 31, 2017) (unpublished) ("[The petitioner] argues that he received ineffective assistance of counsel because [his] counsel failed to properly prepare for [the petitioner's] testimony at trial . . . . [The petitioner] does not explain what he would have said that he did not have an opportunity to say, had [his] counsel been better prepared. Accordingly, [the petitioner] cannot show that [his] counsel's representation fell below an objective standard of reasonableness or that he suffered any prejudice."); Birnie v. United States, Nos. 1:07CV1141, 1152, 2010 WL 233998, at *3 (W.D. Mich. Jan. 13, 2010) (unpublished) ("Movants emphasize their disappointment with [their] counsel's . . . lack of communication during the pretrial phase of the case. However, in evaluating a claim of ineffective assistance, subjective dissatisfaction carries no weight." (internal quotation marks omitted)).

7

Next, in connection with the <u>highly generalized</u> assertion that Petitioner's counsel conducted "no pretrial investigation" (Docket Entry 83 at 17 (emphasis omitted); see also id. at 18 ("Counsel was ineffective in failing to hire an investigator or conduct any pretrial investigation.")), the Memorandum of Law offers only these (three) <u>somewhat specific</u> allegations:

1) "[Petitioner] had requested that [his] trial attorney call witnesses that could testify in [sic] which he refused to do" (id. at 17; see also id. (generically adverting to witnesses Petitioner wanted his counsel to call at trial as "[t]he men who were in front of the residence whom the detectives testified were present on the [day of the offenses charged in Counts Nine, Ten, and Eleven] and [Petitioner's] state attorney who had informed [Petitioner] that the detectives were going to try and 'set him up'"));

2) "[Petitioner] also requested that his attorney go and take live pictures of the area in which the alleged drugs were found to show and prove the inconsistency of the detective's claims" (id. at 18; see also id. ("[Petitioner's] attorney stated that he was not going to do so.")); and

3) "when [Petitioner's] family tried to bring in evidence it was not reviewed or allowed" (id.).

These allegations suffer from a number of fatal deficiencies. First, as the Response properly notes: "[Petitioner] claim[ed] that [his counsel] ignored [Petitioner's] request to call

8

witnesses, but [Petitioner] provide[d] no names of these individuals. He also claim[ed] his state attorney advised that the detectives 'set [Petitioner] up,' but he provide[d] no basis for this allegation." (Docket Entry 86 at 14 (internal citation omitted) (citing and quoting Docket Entry 83 at 17); see also Docket Entry 88 at 2 ("claim[ing] that [Petitioner's counsel] ignored [Petitioner's] request to call witnesses" without identifying witnesses or proffering their testimony), 3 (arguing that "live testimony of [Petitioner] and his former counsel and his proposed witnesses [i]s integral to the accurate assessment of the merits of [his] claim(s)," but revealing nothing about substance of any proposed testimony and failing to name witnesses (stray commas omitted)), 4 (stating that Petitioner desired to call "witnesses his counsel failed to call," grousing about "[his] counsel's unreasonable refusal to even contact the potential exculpatory witnesses which [Petitioner] brought to his [counsel's] attention," and repeating above-quoted allegations in Memorandum of Law about unidentified witnesses, all without naming witnesses or forecasting the details of their testimony), 8-9 (reciting averments of Petitioner's mother that "witnesses that were present on the day [Petitioner] was arrested" have declined to provide affidavits, as well as that she "tried to give the attorney names of individuals that could have been witnesses," while failing to identify any such witnesses or to describe their anticipated testimony).)

9

"Where a petitioner faults counsel for not calling a witness, the petitioner must provide 'concrete evidence of what the witness would have testified to in exculpation,' so that the reviewing court can adequately assess the significance of the decision not to call the witness." Davis v. Clarke, No. 3:13CV119, 2014 WL 693536, at *4 (E.D. Va. Feb. 21, 2014) (unpublished) (internal brackets omitted) (quoting United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004)), appeal dismissed, 577 F. App'x 157 (4th Cir. 2014). Because Petitioner has not "provide[d such] concrete evidence," id. (internal quotation marks omitted), he cannot maintain an ineffectiveness claim on this front.

Second, Petitioner's objection to his counsel's refusal to "go and take live pictures of the area in which the alleged drugs were found" (Docket Entry 83 at 18) does not support an ineffectiveness claim, given that Petitioner has failed to allege (let alone produce evidence to demonstrate) how any such pictures would have "show[n] and prove[n] the inconsistency of the detective's claims" (id.). (See id.; see also Docket Entry 88 at 4 (repeating undeveloped assertions that Petitioner "requested that his attorney go and take live pictures of the area in which the alleged drugs were found to show and prove the inconsistency of the detective's claims" and that "[Petitioner's] attorney stated that he was not going to do so").) Third, although the Memorandum of Law alleges that "[Petitioner's] family tried to bring in evidence [to his

10

counsel, but] it was not reviewed or allowed" (Docket Entry 83 at 18), the Memorandum of Law provides <u>neither</u> any information about the nature of any such evidence <u>nor</u> any basis for the Court to conclude that any such evidence <u>both</u> would have qualified for admission at trial <u>and</u> would have raised a reasonable probability of a different outcome at trial (<u>see</u> <u>id.</u>).[4]  Simply put, "Petitioner's claim of ineffective assistance in th[ese] regard[s] is too vague and conclusory to support relief. . . . Petitioner fail[ed] to identify any evidence or argument whatsoever that counsel could have presented at trial that had a reasonable probability of resulting in a different outcome." <u>Harlan v. United States</u>, Nos. 3:15CR226, 3:19CV111, 2020 WL 5949227, at *6 (W.D.N.C. Oct. 7, 2020) (unpublished), <u>appeal dismissed</u>, No. 20-7727, 2021 WL 2012545 (4th Cir. Jan. 25, 2021) (unpublished); <u>see also</u> <u>United States v. Dyess</u>, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the [d]istrict [c]ourt." (internal quotation marks omitted)).

---

[4] The Reply likewise states that, "[e]ven when [Petitioner's] family tried to bring in evidence [to his counsel,] it was not reviewed or allowed" (Docket Entry 88 at 4); however, the Reply does not specify the evidence in question, except by relaying an averment from Petitioner's mother that "[she] tried to show [his] attorney visual evidence of the place [where] the alleged incident occurred" (<u>id.</u> at 8).  That single specification does not advance Petitioner's cause, as his mother's affidavit does not disclose what that visual evidence revealed, much less how it possibly could have altered the jury's verdict (<u>see</u> <u>id.</u> at 8-9).

11

For its final ineffectiveness allegation, the Memorandum of Law declares in conclusory fashion that "[Petitioner's c]ounsel failed to adequately challenge drug amounts." (Docket Entry 83 at 17 (emphasis omitted).) Petitioner has not articulated any rationale his counsel could have mustered to successfully challenge the drug amounts attributed to Petitioner for sentencing purposes. (See id. at 17-20; Docket Entry 88 at 1-9.) In sum, once more, "Petitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the *Strickland* analysis." Cano, 2009 WL 3526564, at *3; see also United States v. Dull, No. 1:13CR36-5, 2016 WL 3221870, at *2 (W.D. Va. June 10, 2016) (unpublished) ("[The petitioner] makes the bald assertion that the drug quantity was inaccurate but he provides no details or facts to support his claim. 'Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the [d]istrict [c]ourt.'" (internal brackets omitted) (quoting Dyess, 730 F.3d at 359)).

For all of the foregoing reasons, Petitioner's claim for ineffective assistance of counsel lacks merit.[5]

---

[5] On June 22, 2022, the Clerk docketed a document entitled "Amendment to Section 2255 Motion" (Docket Entry 89 at 1 (all-caps font and emphasis omitted)), dated as signed by Petitioner on June 15, 2022 (see id.), which states: "Please make the attachments to this letter a part of the pending [S]ection 2255 [M]otion, and consider it in support of the relevant issue(s). The supporting case law is in further support of the pending motion and is submitted in good faith." (Id. (stray semicolon omitted).) The
(continued...)

Case 1:18-cr-00058-WO   Document 92   Filed 03/01/24   Page 12 of 13

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 82) be denied without issuance of a certificate of appealability.

                                        /s/ L. Patrick Auld
                                       **L. Patrick Auld**
                              **United States Magistrate Judge**
March 1, 2024

---

⁵(...continued)
rest of the document consists of a copy of United States v. Hamann, 33 F.4th 759 (5th Cir. 2022), and a certificate of service. (See Docket Entry 89 at 2-22.) "*Hamann* involved a defendant's confrontation rights in the trial context." Thompson v. United States, Nos. 3:18CR573(11), 3:20CV3232, 2023 WL 7356651, at *7 n.8 (N.D. Tex. Oct. 13, 2023) (unpublished), recommendation adopted, 2023 WL 8360071 (N.D. Tex. Dec. 1, 2023) (unpublished). Because the Section 2255 Motion does not concern such issues (see Docket Entry 82, ¶ 12; Docket Entry 83 at 1-20), Hamann does not provide any "further support of the pending [Section 2255 M]otion" (Docket Entry 89 at 1). To the extent Petitioner intended to assert a new claim (based on Hamann), he could do so on June 15, 2022, i.e., far more than 21 days after (A) he filed the Section 2255 Motion (see Docket Entry 82, Decl. ¶ (reflecting signing date of September 8, 2021)), and (B) the United States filed the Response (see Docket Entry 86 at 16 (reflecting filing date of January 12, 2022)), "only with the opposing party's written consent or the [C]ourt's leave," Fed. R. Civ. P. 15(a)(2); see also 28 U.S.C. § 2242 ("[Habeas motions] may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). Petitioner has shown no such written consent. (See Docket Entry 89 at 1-22.) Moreover, as he "has not moved to amend [the Section 2255 Motion], the Court [need] not consider any allegations or arguments stemming from [any] new claim." White v. Keller, No. 1:10CV841, 2013 WL 791008, at *3 (M.D.N.C. Mar. 4, 2013) (unpublished) (Schroeder, J.) (internal quotation marks omitted). In any event, although "leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment," United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000), Petitioner's failure to explain how Hamann applies to his case (see Docket Entry 89 at 1) renders amendment futile, see Zambrana v. United States, 790 F. Supp. 838, 843 (N.D. Ind. 1992) ("Even pro se litigants are held to minimal standards of pleading and motion practice, and in framing their grounds for § 2255 relief it is well for them to remember . . . [that j]udges are not like pigs, hunting for truffles . . . ." (internal quotation marks and italics omitted)).

13